NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

FLOYD R., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, S.R., *Appellees*.

No. 1 CA-JV 16-0357
FILED 3-28-2017

Appeal from the Superior Court in Maricopa County
No. JD528524
The Honorable Janice K. Crawford, Judge

**AFFIRMED**

COUNSEL

Gates Law Firm, LLC, Buckeye
By S. Marie Gates
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Daniel R. Huff
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Patricia A. Orozco delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Maurice Portley[1] joined.

---

**O R O Z C O**, Judge:

¶1        Floyd R. (Father) appeals the juvenile court's order terminating his parental rights to his daughter, S.R. (the child).  For the following reasons, we affirm.

**BACKGROUND**

¶2        Father and Sharon S. (Mother) are the parents of the child, born in 2006.  In February 2015, the Department of Child Safety (DCS) filed a dependency petition alleging Father was unable to parent due to parental domestic violence.  The petition alleged Father had tested positive for methamphetamine and was unable to parent due to substance abuse.  The petition further asserted Father was currently homeless and had neglected the child's medical and educational needs.  Following a hearing in May 2015, the court found the child dependent as to Father.

¶3        On February 23, 2016, DCS filed a motion to terminate Father's parental rights alleging, as amended, the grounds of chronic substance abuse under Arizona Revised Statutes (A.R.S.) section 8-533.B.3,[2] as well as nine- and fifteen-months out-of-home placement under § 8-533.B.8.a and c.

¶4        The juvenile court held a contested severance hearing on August 9, 2016.  After taking the matter under advisement, on August 25, 2016, the court issued its findings and ruling terminating Father's parental

---

[1]        The Honorable Patricia A. Orozco and the Honorable Maurice Portley, Retired Judges of the Court of Appeals, Division One have been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

[2]        Absent material change since the date of relevant events, we cite to the current version of statutes.

rights to the child on all grounds alleged. Father timely appealed and we have jurisdiction under A.R.S. §§ 8-235.A, 12-120.21.A.1, and 12-2101.A.1.

## DISCUSSION[3]

**¶5** The juvenile court may terminate a parent's rights if it finds one of the statutory grounds by clear and convincing evidence, and the termination is in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 281–82, 288, ¶¶ 7, 41 (2005) (interpreting A.R.S. § 8–533.B). We review an order terminating parental rights for an abuse of discretion and will affirm the order if it is supported by sufficient evidence in the record. *Calvin B. v. Brittany B.*, 232 Ariz. 292, 296, ¶ 17 (App. 2013). We defer to the juvenile court's determinations on conflicts in the evidence, as it "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

---

[3] Father's opening brief is deficient. The two-page cursory argument section contains no citations to legal authority and only a few references to the record. *See* ARCAP 13(a)(7)(A) (requiring "citations of legal authorities and appropriate references to the portions of the record on which the appellant relies"); Ariz. R.P. Juv. Ct. 106(A) (applying ARCAP 13 to juvenile appeals). Rule 13(a)(7)(A) requires that the argument section must include "contentions concerning each issue presented for review, with supporting reasons for each contention, and *with citations of legal authorities* . . . on which the appellant relies." (Emphasis added). Father does not include citations to legal authority *with* his substantive arguments. Although we exercise our discretion to address the issues raised in this case because of the significant liberty interests involved, we caution counsel that failure to comply with these Rules can result in dismissal of an appeal. *See Ritchie v. Krasner*, 221 Ariz. 288, 305, ¶ 62 (App. 2009) (holding the failure to comply with ARCAP 13 can constitute waiver of that claim).

## I.      Statutory Grounds[4]

¶6      Father argues DCS failed to prove Father had an "ongoing substance abuse problem and that he is unable to appropriately parent." Father also asserts DCS failed to provide him with appropriate services. To support a termination on the ground of chronic substance abuse, there must be evidence in the record that the parent is unable to discharge his parental responsibilities "because of . . . a history of chronic abuse of dangerous drugs, controlled substances or alcohol." A.R.S. § 8-533.B.3. There must also be "reasonable grounds to believe that the condition will continue for a prolonged indeterminate period." *Id.* Additionally, the juvenile court must also have found that DCS "made reasonable efforts to reunify the family or that such efforts would have been futile." *Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12 (App. 2005). Because we find sufficient evidence in the record supports termination based on the ground of chronic substance abuse, we need not address the other grounds alleged. *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 251, ¶ 27 (2000) (holding if reasonable evidence supports termination on any one statutory ground, the appellate court need not consider challenges pertaining to other grounds).

¶7      At the severance hearing, the DCS case manager testified that at the outset of this case DCS offered Father urinalysis testing, parent aid services, transportation, and a psychological consultation and evaluation. The evidence also shows DCS gave Father two referrals for substance abuse treatment at TERROS, one in March 2015 and the other in June 2015, both of which were closed due to nonparticipation. With regard to Father's drug testing, the DCS reports in evidence indicate that between April 2015 and

---

4      Father asserts DCS failed to establish his paternity of the child and that "this mishap is significant and warrants a reversal of the court's decision." Father cites no authority to support this argument. *See* ARCAP 13(a)(7) (stating appellant's brief shall include party's contentions, reasons therefor, and necessary supporting citations); *see also* Ariz. R.P. Juv. Ct. 106(A) (applying Rule 13 to juvenile appeals). Further, Father does not cite, and we do not find, that Father challenged his paternity of the child at any time after the child was removed from the family home, at the dependency or as a defense to the termination action, before the superior court. *See State v. Bolton*, 182 Ariz. 290, 297 (1995) (holding appeals court will not consider arguments not raised below unless it is a matter of fundamental error). We therefore reject Father's argument regarding paternity.

June 2015, Father missed forty-three calls and seven required tests. The report further states that Father did not call in at all for testing between June 2015 and January 2016.

¶8 In December 2015, the child moved with her relative placement to Colorado. At some point after that, Father relocated to Colorado and, in March 2016, filed a motion requesting information regarding the child's whereabouts in Colorado and stating that he "would like to move to the city/area" to be near her. Father argues the services DCS provided there were inadequate because the testing sites were too far from his home, DCS did not provide him transportation, and because the first time he arrived to test in Colorado he was charged a fee, which he could not afford. Yet, the record shows that even after relocating to Colorado, Father failed to substantially comply with services quite apart from the issues he now complains.

¶9 DCS is required to provide a parent "the time and opportunity to participate in programs designed to help [him] become an effective parent." *Maricopa Cnty. Juv. Action No. JS–501904*, 180 Ariz. 348, 353 (App. 1994). However, DCS is not required to provide every conceivable service, and a parent's failure or refusal to participate in the services offered or recommended by DCS does not foreclose termination of the parent's rights. *Id.* Additionally, DCS need not undertake futile rehabilitative measures, but only those that offer a reasonable possibility of success. *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 186-87, ¶ 1 (App. 1999).

¶10 The case manager testified that she arranged for Father to be able to complete drug testing in Colorado and offered him another referral for substance abuse services, but he did not take advantage of the opportunity. There is also evidence showing Father was told in June 2016, after he moved from Denver to a smaller town in Colorado, that there were no services available in his town and that he would have to travel to Denver to participate in services. The case manager testified that she changed the assigned testing site to the closest possible location to Father and that she corrected the issue regarding the fee as soon as she was made aware of it. She also testified that Father did not call or request transportation assistance to drug test in Colorado. Further, Father only successfully tested once while in Colorado, which was positive for alcohol.

¶11 The evidence shows that Father took one drug test at the beginning of this case in January 2015, which was positive for methamphetamine, and one test in July 2016, which was positive for

alcohol. These were the only tests Father completed throughout the more than fifteen-month duration of this case. Father also failed to engage in any substance abuse treatment. The record supports the court's findings that DCS made reasonable efforts to reunify Father with the child, but that Father failed to participate in the offered services.

¶12 There is also evidence in the record supporting the court's finding that Father had a history of chronic substance abuse. The DCS report showed Father had a previous arrest for driving while intoxicated, admitted to drinking alcohol and tested positive for alcohol. Also, although Father denied using methamphetamine, he tested positive in January 2015 and was living with Mother, who admitted to using methamphetamine just days before the child was removed.

¶13 Evidence also supports the court's conclusion that Father's substance abuse affects his ability to parent, as it coincides with a history of homelessness, domestic violence, and a failure to meet the child's medical and educational needs. Evidence shows Father was homeless in Arizona after being evicted from Mother's home and was homeless in Colorado after he moved there following the child's move to Colorado. Further, the DCS reports detail a history of daily domestic violence between Mother and Father, including one instance where Father bloodied Mother's nose. When the child came into care, she had significant untreated dental issues and had been suspended from school for not having updated immunization records. Given these facts, coupled with Father's refusal to participate in substance abuse treatment or demonstrate sobriety, sufficient evidence supports the juvenile court's finding that Father's substance abuse will continue for a prolonged and indeterminate period.

## II. Best Interests

¶14 Father also challenges the court's finding that termination of his parental rights is in the child's best interest. "To support a finding that termination is in the child's best interests, [DCS] must prove that the child will affirmatively benefit from the termination." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 50, ¶ 19 (App. 2004). This means that "a determination of the child's best interest[s] must include a finding as to how the child would benefit from a severance *or* be harmed by the continuation of the relationship." *Maricopa Cnty. Juv. Action No. JS–500274*, 167 Ariz. 1, 5 (1990). The best interests requirement may be met if, for example, DCS proves that a current adoptive plan exists for the child, or even that the child is adoptable. *Id.* at 6.

¶15      At the termination hearing, the DCS case manager testified that the child was placed with a relative who was willing to adopt her and her half-sibling. She further testified that the placement was meeting all of the child's needs and that the child would benefit from the termination because it would allow her to have "a permanent, forever loving home." Therefore, we find sufficient evidence supports the court's finding that termination of Father's parental rights is in the child's best interests. *See Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287, ¶ 17 (App. 2016) (stating "a child's interest in permanency must prevail over a parent's uncertain battle with drugs").

**CONCLUSION**

¶16      For the foregoing reasons, we affirm the juvenile court's order terminating Father's parental rights to the child.



AMY M. WOOD • Clerk of the Court
FILED: AA